## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BAELLA MORELLI, JULIA MORELLI,　　　)
JUSTIN MORELLI, MR. J.Y., MRS. L.Y.,　)
O.Y., *a minor, by and through her parents,*　)
*Mr. J.Y. and Mrs. L.Y.*;　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　　)　Civil Action No. 24-1028
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
ARMSTRONG SCHOOL DISTRICT,　　　　)
DOUGLAS A. FLANDERS,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.

### MEMORANDUM OPINION

Plaintiffs Baella Morelli and O.Y., and their parents Julia Morelli, Justin Morelli, J.Y., and L.Y. filed claims under Title IX, 42 U.S.C. § 1983, and Pennsylvania law to address Defendant Armstrong School District's (hereinafter "the School District") alleged failure to prevent Defendant Douglas Flanders ("Mr. Flanders")—a teacher and coach at the Junior-Senior High School where Ms. Morelli and O.Y. were students—from sexually harassing and assaulting Ms. Morelli and Ms. O.Y. during the 2022–23 academic year.[1]  In Plaintiffs' First Amended Complaint ("FAC"), they seek declaratory relief, injunctive relief, and monetary damages from the Defendants.  (Docket No. 24 at ¶¶ 229–46).  Several motions are now pending before the Court: Mr. Flanders has filed a Motion to Dismiss under Rule 12(b)(6) (Docket No. 26), and a Motion to Dismiss Counts XI (Ms. O.Y. and her parents' Substantive Due Process claim) and XIII (Ms. O.Y. and her parents' Equal Protection claim) pursuant to Rule 12(b)(1) (Docket No. 28); and the School District has filed a Motion to Dismiss under Rule 12(b)(6) (Docket No. 29).  For the reasons

---

[1]　　Throughout this Memorandum Opinion the Court sometimes refers to Plaintiffs collectively as: "Plaintiffs," meaning all four plaintiffs; "the student Plaintiffs," meaning Ms. Morelli and Ms. O.Y.; and "the parent Plaintiffs," meaning Ms. Morelli's and Ms. O.Y.'s parents.

explained herein, the Court will <u>GRANT</u> the School District's Rule 12(b)(6) Motion, <u>GRANT IN PART AND DENY IN PART</u> Mr. Flanders's Rule 12(b)(6) Motion, and <u>DENY</u> Mr. Flanders's Rule 12(b)(1) motion.

## I.    **BACKGROUND**[2]

Ms. Morelli and Ms. O.Y. were students at Armstrong Junior-Senior High School in the School District in the 2022–23 school year.  Mr. Flanders was a mathematics teacher and sports coach at Armstrong Junior-Senior High School.  (Docket No. 24 at ¶¶ 25-26).  Plaintiffs allege that, as early as 2019, the School District received a sexual assault/harassment complaint(s) against Mr. Flanders, but that he nevertheless was permitted to continue his duties teaching and coaching. (*Id.* ¶ 28 ("Upon information and belief, Armstrong School District received its first sexual assault/harassment claim against Defendant Flanders in 2019.")).

Ms. Morelli and Ms. O.Y. allege that, during the 2022–23 school year, Mr. Flanders made "sexually suggestive" comments to them and to other female classmates.  (*Id.* ¶ 30).  One such comment he is alleged to have repeated is telling "female students in his class that they 'knew what he wanted' for a gift."  (*Id.* ¶ 90).  Plaintiffs do not specify in the pleadings any dates on which Mr. Flanders is alleged to have made such comments, how frequently he stated the same, nor to whom (other than to the student Plaintiffs and female students, generally).

In addition to these alleged inappropriate comments, there are four key incidents of Mr. Flanders's misconduct alleged in the FAC that give rise to Plaintiffs' claims.  First, Mr. Flanders is alleged to have "put his hand underneath O.Y.'s backpack and touched her buttocks while posing

---

[2]    At this stage of the case, the factual allegations set forth in the FAC must be taken as true and viewed in the light most favorable to Plaintiffs.  Accordingly, the fact summary herein is drawn from the FAC, with all allegations drawn in the light most favorable to Ms. Morelli, Ms. O.Y., and their parents. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

for a photograph" in December 2022.  (*Id.* ¶ 31).  The following pring, a second incident took place—this time involving Ms. Morelli—when Mr. Flanders is alleged to have "approach[ed] her from behind, pressing his erect penis against her back, and rubbing her shoulders."  (*Id.* ¶ 32).  The third incident is alleged to have occurred around the same time (April 2023), again involving Ms. Morelli, when Mr. Flanders "plac[ed] his erect penis on Ms. Morelli's classroom desk within her view while walking around the classroom to hand papers out to students."  (*Id.* ¶ 33).  In the fourth alleged incident, Mr. Flanders is alleged to have "touched O.Y. on the inner thigh and pulled her towards him at his desk."  (*Id.* ¶ 34).  Throughout "this period"—by which Plaintiffs appear to refer to December 2022 through April 2023—Plaintiffs allege that Mr. Flanders "made numerous sexually suggestive, innuendo-filled, and otherwise inappropriate statements to Ms. Morelli, O.Y., and other female students."  (*Id.* ¶ 36).

Ms. O.Y. told a teacher about both instances of alleged assaults that she experienced.  (*Id.* ¶ 35).  As a result, on April 21, 2023, Ms. O.Y. was called to the principal's office to discuss the allegations.  (*Id.* ¶¶ 35, 37).  That day, Ms. Morelli told her mother than she was also being called to the principal's office to discuss Mr. Flanders's conduct.  (*Id.* ¶ 38).  On the day following Ms. O.Y. and Ms. Morelli's meetings with the principal, Mr. Flanders was removed from a baseball field on school property.   (*Id.* ¶ 39).  However, Mr. Flanders was thereafter allowed on school property in part because his girlfriend's son was a student and, for a time, Mr. Flanders was permitted on school grounds as a stepparent to that child.  (*Id.* ¶¶ 42, 44-45 ("In late April 2023, Defendant Armstrong School District allowed Defendant Flanders to attend District baseball games" and a school board member explained to Mr. J.Y. and Mrs. L.Y. that "Defendant Flanders was allowed on District property as a parent[.]")).

On May 8, 2023, the Armstrong School Board approved a retirement application filed by Mr. Flanders, indicating that his retirement would be effective May 25, 2023. (*Id.* ¶ 46). In mid-May (May 15th), Ms. O.Y. saw Mr. Flanders in a school parking lot, and was upset by the encounter. (*Id.* ¶ 47). On May 17, 2023, Ms. O.Y. received a text from a friend indicating that Mr. Flanders watched a private volleyball clinic that was majority female with only two male students participating (one of them being Mr. Flanders's stepson). (*Id.* ¶ 48). Child & Youth Services ("CYS") had become involved in the events and allegations underlying this suit in April 2023, and CYS eventually required the School District to bar Mr. Flanders from district property. (*Id.* ¶¶ 43, 52). It is believed that Mr. Flanders's exit interview was scheduled to take place on district property on May 18, 2023. (*Id.* ¶ 53).

In June 2023, Mr. Flanders was charged by the Armstrong County District Attorney's Office with indecent assault without consent of another and harassment. (*Id.* ¶ 56). Thereafter, to address all that had transpired, the parent Plaintiffs had a meeting with the School District superintendent and assistant superintendent on July 27, 2023, at which time the parent Plaintiffs requested a number of policy changes. (*Id.* ¶¶ 57-60).

After the events of 2022–23, Ms. Morelli went on to graduate in 2024. Ms. O.Y. left Armstrong Junior-Senior High School to attend the Commonwealth Charter Academy Cyber Program after an incident on the first day of the fall semester of 2023 when a different male teacher "'manspread' himself in front of a classroom … while discussing in pejorative terms the reports that led to Defendant Flanders' retirement." (*Id.* ¶ 62). Plaintiffs allege that such behavior by another teacher in the aftermath of Mr. Flanders's misconduct shows that "the District had not implemented necessary changes to sexual harassment and misconduct training." (*Id.* ¶¶ 62-63). Ms. O.Y. completed her secondary education in 2024. (*Id.* ¶ 80). Mr. Flanders received an

educational suspension for the assault that had occurred when he "press[ed] his erect penis against [Ms. Morelli's] back." (*Id.* ¶ 73). And, at the time the FAC was filed in this matter, Mr. Flanders's criminal trial was set for August 12, 2024. (*Id.* ¶ 81).[3] Based on the factual allegations in the FAC, Plaintiffs are pursuing fifteen claims consisting of five claims against the School District and ten claims against Mr. Flanders.

In **Count I**, all Plaintiffs sue the School District for violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). They allege and argue that: the School District is an education program that receives federal funding; Mr. Flanders was a School District employee; Ms. Morelli and Ms. O.Y. were subjected to harassment in the form of unwelcome sexual conduct by Mr. Flanders; such conduct was severe, pervasive, and offensive to an extent that Ms. Morelli and Ms. O.Y. were effectively deprived of equal access to education opportunities; the School District had actual knowledge of the alleged sexual harassment; and the School District was deliberately indifferent to known acts of harassment by permitting Mr. Flanders to return to school district property after allegations of sexual misconduct. (*Id.* ¶¶ 82-96).

In **Count II**, Mr. and Mrs. Morelli sue the School District under 42 U.S.C. § 1983 for violating their Fourteenth Amendment "liberty interest … in the parenthood and companionship of their children and the maintenance and integrity of the family unit" by the School District's failure to educate, train, and supervise its employees regarding the right of students to be free of sexual harassment and discrimination. (*Id.* ¶¶ 97-105). In **Count III**, Mr. J.Y. and Mrs. L.Y. pursue the same claim. (*Id.* ¶¶ 106-14).

---

[3]    Public records indicate that since that time, Mr. Flanders was adjudicated guilty of indecent assault without consent of another, 18 Pa. C.S.A. § 3126(a)(1), and harassment by subjecting another to physical contact, 18 Pa. C.S.A. § 2709(a)(1), on February 13, 2025. Court Summary, *Commonwealth v. Flanders*, CP-03-CR-0000577-2023.

In **Count IV**, all Plaintiffs sue the School District for failure to train pursuant to Section 1983 and allege and argue in support of this claim that the School District "failed to create and implement a policy and practice of properly identifying predatory employees and vulnerable students" and is liable for "wrongful conduct of its employees … as the decision-makers failed to train and supervise its agents and employees charged with the care and custody of youth." (*Id.* ¶¶ 115-20). Plaintiffs identify the School District's specific shortcoming as its "fail[ure] to develop proper sexual harassment prevention plans and policies, sexual harassment/abuse and Title IX violation reporting procedures, and plans and policies for ensuring that teachers against whom Title IX complaints had been lodged could not access District property and District Students" where Mr. Flanders accessed district property after being accused of sexual misconduct. (*Id.* ¶¶ 120-22).

The last claim against the School District is **Count X** wherein all Plaintiffs sue the School District under Section 1983 and the Ninth Amendment for violating their rights under the International Covenant on Civil & Political Rights ("ICCPR"), which is a Senate-ratified treaty that protects children from the deprivation of certain rights, including the right to integrity of the family unit, and Ms. Morelli and Ms. O.Y.'s rights as minors. (*Id.* ¶¶ 159-70). Plaintiffs allege that the School District violated such rights by failing to have policies in place that would have prevented disruption of the family unit, and by failing to prevent sexual abuse. (*Id.* ¶ 170).

Turning to the claims against Mr. Flanders, in **Count V** Ms. O.Y. sues Mr. Flanders for battery under Pennsylvania law based on the incidents when he put his hand on her buttocks in December 2022, and then put his hands on her thighs and pulled her toward him in April 2023. (*Id.* ¶¶ 124-29). In **Count VI**, Ms. Morelli also sues Mr. Flanders for battery based on the April 2023 incidents wherein Mr. Flanders pressed his genitalia against her back and rubbed her

shoulders, and placed his erect penis on her desk in the classroom. (*Id.* ¶¶ 131-36). **Counts VII** and **VIII** are assault claims against Mr. Flanders brought by Ms. O.Y. and Ms. Morelli that address the same conduct underlying the claims in Counts V and VI. (*Id.* ¶ 137-50). In **Count IX**, Ms. Morelli sues Mr. Flanders for intentional infliction of emotional distress based on the conduct underlying her assault and battery claims. (*Id.* ¶ 151-58). Ms. Morelli alleges that she suffered extreme emotional distress as a result of his intentional acts. (*Id.*). Ms. O.Y. likewise pursues an IIED claim against Mr. Flanders for intentional infliction of emotional distress in **Count XV**. (*Id.* ¶ 221-28).

Count **XI** contains a Fourteenth Amendment Substantive Due Process claim brought by Ms. O.Y. and her parents against Mr. Flanders. They allege and argue that under the Fourteenth Amendment children have a right to freedom from sexual assault and intrusion on bodily integrity in schools, and that such right was violated by Mr. Flanders when, acting under the color of law, he touched Ms. O.Y.'s buttocks and inner thighs. (*Id.* ¶¶ 171-79). Ms. Morelli pursues a substantially identical Substantive Due Process claim against Mr. Flanders in **Count XII**. (*Id.* ¶¶ 180-88).

In **Count XIII**, Ms. O.Y. and her parents sue Mr. Flanders under Section 1983 and the Fourteenth Amendment for a violation of the Equal Protection clause, arguing that Ms. O.Y. is a member of a protected class (female), Mr. Flanders acted under color of law as a public-school teacher, and that Mr. Flanders violated Ms. O.Y.'s equal protection rights when he sexually harassed her because she is female. (*Id.* ¶¶ 189-204). Ms. O.Y. and her parents allege that Mr. Flanders's actions were discriminatory "in effect and in intent" because Ms. O.Y. was targeted as a female and male students were not targeted. (*Id.*). **Count XIV** is Ms. Morelli's substantially similar Equal Protection claim. (*Id.* ¶¶ 205-20).

Based on these fifteen claims, Plaintiffs are asking for money damages; attorney fees and costs; a declaration that the School District's actions violated Title IX; an injunction that would require the School District to enforce and apply Title IX; a declaration that the School District's actions violated Section 1983 and the Fourteenth Amendment; a declaration that Mr. Flanders battered Ms. O.Y. and Ms. Morelli, assaulted them, and intentionally inflicted emotional distress upon them; a declaration that the School District violated Section 1983 and the Ninth Amendment; and a declaration that Mr. Flanders violated Ms. O.Y. and Ms. Morelli's Substantive Due Process and Equal Protection rights.  (*Id.* ¶¶ 229-46).  Defendants have moved to dismiss all claims, and such motions are fully briefed and ready for disposition.

## II.    APPLICABLE LEGAL STANDARDS

When the Court considers a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff; and the Court must then "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief"; such short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).  That is, while this standard does not require "detailed factual allegations," Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court's assessment of a facial Rule 12(b)(1) challenge requires a similar analysis. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

## III.    DISCUSSION

The Court first addresses Mr. Flanders's Motion to Dismiss Counts XI and XIII, which are Ms. O.Y. and her parents' Substantive Due Process and Equal Protection claims under the Fourteenth Amendment. (Docket No. 28). Mr. Flanders argues that such claims should be dismissed because courts have not found that parents' fundamental parental rights are implicated when their children suffer sexual abuse; rather, parental rights are only recognized as a basis for recovery in cases of wrongful death or wrongful termination of parental rights. Mr. Flanders thus argues that the parents of Ms. O.Y. do not have an independent cause of action under Section 1983 for violations of *their* rights, so their claims in Counts XI and XIII should be dismissed. In the motion, Mr. Flanders also argues that the parents of O.Y. have not alleged facts supporting the claims in XI and XIII. Accordingly, the Court will address Mr. Flanders's arguments for dismissal in the motion at Docket No. 28 together with his arguments for dismissal of all claims against him in his Motion to Dismiss at Docket No. 26.[4]

Thus, the Court turns to the School District and Mr. Flanders's Rule 12(b)(6) motions. The School District seeks dismissal of the claims against it in Counts I, II, III, IV, and X. Mr. Flanders

---

[4]    Construed broadly, Mr. Flanders seeks dismissal of Ms. O.Y.'s parents' claims in Counts XI and XIII pursuant to Rule 12(b)(1) and 12(b)(6) insofar as he argues that Ms. O.Y.'s parents failed to allege a recognized federal right in support of their Section 1983 claims in those counts. The Court is cautious in treating a challenge to merits as a jurisdictional challenge. *See Hartig Drug Co.*, 836 F.3d at 273 n. 14 ("We have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits."). In any event, for the reasons the Court explains in the body of its opinion, the Court would reach the same outcome as to the claims in Counts XI and XIII regardless of the nature of the challenge.

seeks dismissal of the claims against him in Counts V, VI, VII, VIII, IX, XI, XII, XIII, XIV, and XV.

    A.    *Count I – All Plaintiffs v. The School District for a Title IX Violation*

In Count I, Plaintiffs claim that the School District violated Title IX by being deliberately indifferent to known acts of harassment and by constructively denying Ms. Morelli and Ms. O.Y. equal access to educational opportunities at Armstrong. The School District seeks dismissal of the claim because, according to the allegations, there was no deliberate indifference.

"Sexual harassment is a form of Title IX discrimination," *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020), and "a school district can be held liable in damages in cases involving a teacher's sexual harassment of a student." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). However, "[f]or a school district," like the School District, "to be liable under Title IX's private right of action, an appropriate person must have actual knowledge of sex-based harassment and must respond with *deliberate indifference*." *M.S.*, 969 F.3d at 125 (emphasis added). "An 'appropriate person' … is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290.

The School District argues that Plaintiffs fail to allege facts that satisfy the elements of a Title IX claim because, according to their allegations, the School District acted promptly to remove Mr. Flanders from district property upon learning of allegations of sexual misconduct in April 2023. To the extent that Mr. Flanders was later seen on school property, the School District briefly permitted him to be present in a parental capacity before banning him from the property entirely. This, the School District argues, does not constitute deliberate indifference. The School District further argues that, to the extent that Plaintiffs would attempt to show deliberate indifference by

alleging that the School District knew of misconduct allegations against Mr. Flanders as early as 2019, Plaintiffs' averment of known misconduct dating back to 2019 is vague and conclusory. Additionally, the School District argues that allegations of other teachers' knowledge of Mr. Flanders's misconduct would not plausibly show that an appropriate person had knowledge and responded with deliberate indifference. *See Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 346 (W.D. Pa. 2011) (indicating that teachers generally are not Title IX "appropriate person[s]").

Having considered these arguments, it is the Court's determination that Plaintiffs' allegation of the School District's knowledge of possible misconduct on Mr. Flanders's part dating back to 2019 is too conclusory to support a showing of deliberate indifference. Regarding any misconduct that occurred before the 2022–23 school year, Plaintiffs provide no details about what was said or done, where it was said or done, and to whom it was said or done: "Upon information and belief, Armstrong School District received its first sexual assault/harassment claim against Defendant Flanders in 2019. He was nonetheless allowed to continue teaching and coaching at the District." (Docket No. 24 at ¶ 28). Neither that allegation, nor the allegations about the School District's response to Ms. Morelli and Ms. O.Y.'s complaints in the Spring of 2023 amount to a plausibly alleged Title IX violation. For that reason, the Court will <u>grant</u> the School District's motion to dismiss the claim in Count I. Such claim will be <u>dismissed</u> and, as Plaintiffs have already had an opportunity to cure the deficiency addressed herein, the dismissal of Plaintiffs' Title IX claim will be <u>with prejudice</u>.

     B.    *Counts II and III – The Parents v. The School District for Violation of Fundamental Parental Rights*

In Count II, Ms. Morelli's parents seek relief against the School District under Section 1983 for a deprivation of their liberty interest in the parenthood and companionship of their child

and integrity of their family unit, a right they find in the Fourteenth Amendment. Ms. O.Y.'s parents seek to vindicate the same right in Count III. The School District seeks dismissal of the claims and argues that parents—like the Morellis and Ms. O.Y.'s parents—lack a recognized protected interest for such claim.

The Court will grant the School District's motion to dismiss these claims because "a parent's ability to recover damages with their own independently pled Section 1983 claim stemming from constitutional deprivations suffered by minor children *is limited to those situations involving the death of a child or the termination of parental rights*." *Dipippa v. Union Sch. Dist.*, 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011) (emphasis added). The alleged sexual abuse of Ms. Morelli and Ms. O.Y. in this case does not fall within those parameters.

As outlined in *Troxel v. Granville*, 530 U.S. 57 (2000), the Supreme Court has recognized the due process right of parents to make critical decisions about the upbringing of their children. *Id*. at 65-66 (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (holding that the Due Process Clause protects the right of parents to "establish a home and bring up children" and "to control the education of their own"); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925) (referring to the right "to direct the upbringing and education of children under their control"); and *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (recognizing the parental liberty interest in the "custody, care and nurture of the child")). Moreover, the United States Court of Appeals for the Third Circuit has ruled, precedentially, that in the context of parental liberty interests, "the Due Process Clause only protects against deliberate violations of a parent's fundamental rights – that is, where the state action at issue was *specifically aimed at interfering with protected aspects of the parent-child relationship*." *McCurdy v. Dodd*, 352 F.3d 820, 827-28 (3d Cir. 2003) (emphasis added)

12

(declining to expand due process protections to encompass parental companionship, care, and affection of an independent adult son.).

Here, the putative state actions at issue—acts of sexual assault and harassment—were *directed toward Ms. Morelli and Ms. O.Y. within classrooms* as was the alleged "failure to educate, train, and supervise its employees in the *rights of students* to be free from sexual harassment and discrimination." (Docket No. 24 at ¶¶ 29-36; 103, 105, 112, 114) (emphasis added). These alleged state actions were directed specifically to the students themselves, not toward the relationships between the students and their parents nor toward the parents' choices in how they rear their children. As one court previously stated: "[t]hese substantive due process cases do not hold that family relationships are, in the abstract, protected against all state encroachments, direct and indirect, but only that the state may not interfere with an individual's right to choose how to conduct his or her family affairs . . . [F]amily members have the right, when confronted with the state's attempt to make choices for them, to choose for themselves. This case does not involve such a choice." *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 8 (1st Cir. 1986). Such an encroachment on the parent-child relationship or parental choices about their family affairs has not been averred here, either.

Furthermore, although Plaintiffs argue that the Court can conceive of the right asserted as being grounded in the courts' recognition of parents' rights in other contexts—*e.g.*, *Troxel*, wherein the Supreme Court vindicated a parent's fundamental right "to make decisions concerning the care, custody, and control" of her daughters by opposing their grandparents' petition for visitation rights—this Court will heed the Third Circuit's admonition against expanding the breadth of rights recognized as fundamental under the Fourteenth Amendment. *See McCurdy*, 352 F.3d at 829 ("[W]e are hesitant to extend the Due Process Clause to cover official actions that were

not deliberately directed at the parent-child relationship[.]"); *see also Dipippa*, 819 F. Supp. 2d at 446 ("The Third Circuit has cautioned against extending the right to recover beyond those parameters[.]").

Accordingly, the Court will <u>grant</u> the School District's motion to dismiss the claims in Counts II and III. Such claims will be <u>dismissed</u>; moreover, the Court having explained that its reasoning is premised on the law and not any shortcoming of the allegations, this dismissal of the parent Plaintiffs' Fourteenth Amendment claims will be <u>with prejudice</u>.[5]

C.      *Count IV – All Plaintiffs v. The School District for Section 1983, Failure-to-Train*

In Count IV, all Plaintiffs seek relief under Section 1983 against the School District for alleged failure to train. The School District argues that this claim must fail as pleaded because the Third Circuit has considered and rejected similar failure-to-train claims that arise when a teacher is discovered to have committed sex abuse against a student. *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 630 (3d Cir. 2007) ("Additionally, because not committing the crime of sexually abusing a child is obvious, the failure of Hamburg to train its employees to spot signs of sexual abuse such as Mansfield's 'grooming' methods was not deliberately indifferent.").

Cases such as *Kline*, and its rationale, indicate that while there may be instances wherein a pattern of sexual misconduct will be found to support a failure-to-train theory of liability, it is generally difficult to allege a failure-to-train claim based on sex abuse. *Id.* at 629-30. In this case such circumstances are not pleaded. Plaintiffs argue that they have adequately alleged failure-to-train by alleging that the School District knew of Mr. Flanders's conduct as early as 2019 but took

---

[5]      In reaching this conclusion, the Court echoes the sentiments expressed in *Burgos* that "in denying a cause of action . . ., [the court] seek[s] neither to minimize the loss of [or harm to] a family member nor to denigrate the fundamental liberty interest in matters of family life that has long been a part of our constitutional fabric. But even an interest of great importance may not always be entitled to constitutional protection." 807 F.2d at 10.

no corrective action and allowed him to access district property thereafter, and even after he had been accused of assault by Ms. Morelli and Ms. O.Y. However, this Court has already explained that Plaintiffs' allegation that the School District knew of misconduct as early as 2019 is vague and conclusory, and—with respect to Mr. Flanders being on district property after Ms. Morelli and Ms. O.Y. complained to administrators—that allegation does not show the type of failing that would be adequate for a failure-to-train claim under the rationale in *Kline*. Accordingly, the Court will <u>grant</u> the School District's motion to dismiss the claim in Count IV. As Plaintiffs have amended this claim once already, the claim in Count IV will be <u>dismissed</u> <u>with prejudice</u>.

       D.     *Count V, VI, VII, and VIII – Ms. Morelli and Ms. O.Y. v. Mr. Flanders, for Battery & Assault*

In Counts V through VIII, Ms. Morelli and Ms. O.Y. pursue state-law claims against Mr. Flanders for battery and assault. Under Pennsylvania law, the elements of battery are: "(1) the defendant 'acted intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) an offensive contact with the person of the other directly or indirectly results.'" *Deitrick v. Costa*, No. 4:06-CV-1556, 2014 WL 268681, at \*17 (M.D. Pa. Jan. 23, 2014) (quoting Restatement (Second) of Torts § 18)). The elements of assault are: "the defendant (1) committed 'an act intended to put the plaintiff in reasonable apprehension of an immediate harmful or offensive contact' and (2) 'succeeded in causing an apprehension of such contact.'" *Brown v. Am. Airlines, Inc.*, 723 F. Supp. 3d 411, 422 (E.D. Pa. 2024) (quoting *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017)).

Mr. Flanders seeks dismissal of these four claims. As to Ms. O.Y.'s battery claim, he argues that Ms. O.Y.'s allegations that he touched her buttocks and put his hands on her thighs are allegations of contact but not of intent to cause harmful or offensive contact. Regarding Ms.

Morelli's battery claim, he argues that Ms. Morelli's allegation that he pressed his genitalia into her back and later placed his erect genitalia on her desk are allegations of contact but not of intent to cause harmful or offensive contact. For Ms. O.Y.'s assault claim, Mr. Flanders argues that O.Y. has not pleaded any facts to show that he intended to place her in fear of a harmful or offensive contact. Regarding Ms. Morelli's assault claim, Mr. Flanders argues that her allegations are conclusory and that while she alleges humiliation, shame, embarrassment, physical pain, and mental suffering, she does not provide an adequate description of her alleged damages.

Mr. Flanders's arguments for dismissal are flawed. As Plaintiffs point out, the requisite intent for battery under Pennsylvania law is not intent to cause harm or to cause offense; rather, it is the intent to contact the plaintiff bodily in a way that a reasonable person would find offensive. *Lee v. City of Philadelphia*, No. CIV.A. 06-1155, 2008 WL 191213, at *2 (E.D. Pa. Jan. 22, 2008) (explaining the intent requirement for the crimes of "second degree misdemeanor indecent assault and the tort of battery" which "are the same"). Ms. O.Y. and Ms. Morelli have alleged that Mr. Flanders intentionally made physical contact with them. They have further alleged that reasonable people would find the contact harmful and offensive, given its sexual nature. The Court finds their pleadings with respect to the battery claims in Counts V and VI to be adequate. Therefore, the Court will <u>deny</u> Mr. Flanders's motion to dismiss those claims (Counts V and VI).

Turning to Ms. O.Y.'s assault claim, Ms. O.Y. adequately alleged a battery, so the Court is also satisfied that she adequately alleged an assault. *See Kevin C. v. Foundations Behav. Health*, 705 F. Supp. 3d 368, 393 (E.D. Pa. 2023) (explaining that an "assault … is an act intended to put another in reasonable apprehension of an immediate battery, which succeeds in causing an apprehension of such a battery." (quoting *D'Errico v. DeFazio*, 763 A.2d 424, 431 n. 2 (Pa. Super. Ct. 2000)). As for Mr. Flanders's argument that Ms. Morelli's assault allegations are inadequate

because she "gives no description of [her] alleged damages, she simply states that the damage occurred" (Docket No. 27 at 9-10), the Court rejects that argument because Ms. Morelli has alleged that Mr. Flanders committed an act to put her in reasonable apprehension of an immediate harmful or offensive contact and that he succeeded in causing apprehension of such contact. Additionally, elsewhere in the FAC, she has alleged that she "suffered extreme mental distress in the form of severe anxiety and fear as a result of [Mr. Flanders's] actions" and went to "counseling as a result of the severe mental stress" she experienced. (Docket No. 24 at ¶ 158 (describing her injuries in support of her IIED claim)). Based on such allegations, the Court is satisfied that Ms. Morelli's assault claim is adequately alleged, and the Court will <u>deny</u> Mr. Flanders's motion to dismiss both her and Ms. O.Y.'s claims (Counts VII and VIII).

E.    *Counts IX and XV – Ms. Morelli and Ms. O.Y. v. Mr. Flanders, for IIED*

Next, the Court will address the claims in Counts IX and XV, wherein Ms. Morelli and Ms. O.Y. allege IIED. Mr. Flanders seeks the dismissal of their IIED claims and argues that the claims should be dismissed because the Pennsylvania Supreme Court has not recognized an IIED tort yet.

This Court and others have recognized that while "the Pennsylvania Supreme Court has never explicitly recognized the tort of intentional infliction of emotional distress, it has cited Section 46 of the Restatement (Second) of Torts 'as setting forth the minimum elements necessary to sustain such a cause of action' under Pennsylvania law" and, "[b]ased on [such] precedent, the United States Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt IIED as a cause of action as stated in Section 46." *Golden v. Perrin*, No. 1:21-CV-00187-RAL, 2022 WL 2791186, at *9 n. 10 (W.D. Pa. July 15, 2022) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000), and *Williams v. Guzzardi*, 875 F.2d 46, 50–51 (3d Cir. 1989)). Accordingly, the Court is unpersuaded by Mr. Flanders's contention that an IIED

claim under Pennsylvania tort law is not available to Plaintiffs.  The Court is likewise unpersuaded by Mr. Flanders's argument that Ms. Morelli and Ms. O.Y.'s IIED claims are implausible as alleged because there are no allegations of physical injury (only mental injury), and—with respect to Ms. O.Y.—his argument that the allegations are not extreme or outrageous because it is possible that Mr. Flanders's touching (putting his hand on her buttocks and pulling him toward himself by her thighs) was not sexual in nature.

The elements of an IIED claim are: (1) "extreme or outrageous" conduct; (2) that is "intentional or reckless"; (3) that causes "emotional distress"; that is (4) "severe."  *Hill v. Borough of Doylestown*, No. CIV.A. 14-2975, 2015 WL 1874225, at *5 (E.D. Pa. Apr. 23, 2015) (citing *Rosembert v. Borough of E. Landsdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014)).  Mr. Flanders argues that one reason that Ms. Morelli and Ms. O.Y.'s IIED claims should not make it past pleadings is that they have not alleged physical injury, which he identifies as a requirement of an IIED claim.  Mr. Flanders is partially correct insofar as courts—including the Third Circuit—have held that "to succeed on an [IIED] claim, [a plaintiff] must show that she suffered 'some type of resulting physical harm due to the defendant's outrageous conduct.'"  *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).[6] Critically, however, the Pennsylvania Supreme Court has indicated that where emotional distress is "supported by competent medical evidence" it can satisfy the physical injury requirement for

---

[6]    *Reedy*, 615 F.3d at 232 ("Reedy has not pointed to any physical harm she suffered as a result of police conduct and, for that reason alone, her intentional infliction of emotional distress claim fails as a matter of law."); *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) ("[A] plaintiff must allege that he or she suffered some type of resulting physical harm due to the defendant's outrageous conduct, which must be supported by competent medical evidence" (cleaned up)); *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 862 (E.D. Pa. 1993) ("A threshold requirement to determine whether conduct has reached the necessary level of outrage is an allegation of physical injury or harm."); *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122–23 (Pa. Super. Ct. 2004) ("In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.").

IIED.  *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) ("We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence."); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress.").

As this Court has observed *supra*, Section III.D., Ms. Morelli alleges that she "suffered extreme emotional distress in the form of severe anxiety" and had to "undergo counseling as a result of the severe mental distress she experienced" due to Mr. Flanders's conduct.  (Docket No. 24 at ¶ 157).  Ms. O.Y. alleges that she also had "severe anxiety" and "was forced to undergo counseling as a result of the severe mental distress she experienced" from the events underlying her claims.  (*Id.* ¶ 227).  Because Ms. Morelli and Ms. O.Y. have alleged facts indicating they suffered emotional distress that can be demonstrated through competent medical evidence, it would be premature to dismiss their IIED claims.  For that reason, the Court will <u>deny</u> Mr. Flanders's motion to dismiss the claims in Counts IX and XV.

F.    *Count X – All Plaintiffs v. The School District, Ninth Amendment and the ICCPR*

In Count X, all Plaintiffs bring a claim against the School District for violating their rights under the Ninth Amendment which—according to Plaintiffs' legal theory—incorporates provisions of the ICCPR, a Senate-ratified treaty that protects children and ensures integrity of the family unit.  Plaintiffs seek to vindicate their right(s) under the ICCPR and Ninth Amendment through 42 U.S.C. § 1983.  Seeking dismissal of the claim, the School District argues that the Ninth Amendment and the ICCPR do not confer substantive rights and cannot be the basis for a civil rights claim under Section 1983.

This Court has explained that the "Ninth Amendment standing alone does not confer substantive rights for purposes of pursuing a constitutional claim" and "section 1983 civil rights claims premised on the Ninth Amendment must fail because there are no constitutional rights secured by that amendment." *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003) (cleaned up); *Spell v. Allegheny Cnty. Admin.*, No. CIV.A. 14-1403, 2015 WL 1321695, at *4 (W.D. Pa. Mar. 24, 2015). Plaintiffs argue that decisions indicating Ninth Amendment Section 1983 cases must fail do not doom their claim. They acknowledge that the Ninth Amendment does not confer substantive rights; however, they argue that the Ninth Amendment nonetheless "acknowledges that there are other sources of civil rights than the federal constitution." (Docket No. 37 at 16). Ultimately, Plaintiffs argue that, through Section 1983 and the Ninth Amendment, they should be able to vindicate rights under the ICCPR. (*Id.* ("The Ninth Amendment states that the federal Charter is not an exhaustive list of rights, and the … ICCPR … provides such rights.")).

Plaintiffs' point is taken; however, a critical problem with their argument is that "[u]nless a treaty is self-executing, it must be implemented by legislation before it gives rise to a private cause of action." *Flores-Nova v. Att'y Gen.*, 652 F.3d 488, 495 n. 6 (3d Cir. 2011). As it stands, the ICCPR is not self-executing and cannot provide relief. *Ballentine v. United States*, 486 F.3d 806, 815 (3d Cir. 2007) ("As such, the rights articulated in ICCPR are aspirational until 'the discretion of the Legislature and Executive Branches' deem otherwise."); *Brown v. Att'y Gen.*, 204 F. App'x 130, 133 n. 4 (3d Cir. 2006) ("We note, in any event, that neither the non-self-executing ICCPR nor the unratified Convention could possibly provide Brown with any relief."); *Madden v. Holt*, 185 F. App'x 197, 198 n. 2 (3d Cir. 2006) (explaining that "habeas relief is not available for a violation of the ICCPR because it is not self-executing"); *Brightwell v. Lehman*, No. CIV.A. 03-205J, 2006 WL 931702, at *10 (W.D. Pa. Apr. 10, 2006) (citing cases). *Cf. Jogi v. Voges*, 480

F.3d 822, 835 (7th Cir. 2007) (determining that the plaintiff was permitted to pursue his claim under Article 36 of the Vienna Convention pursuant to 42 U.S.C. § 1983, after determining: (1) that the Convention is self-executing, and (2) that Article 36 "grants private rights to an identifiable class of persons").  Accordingly, the Court will <u>grant</u> the School District's motion to dismiss Count X, and the Court will <u>dismiss</u> Plaintiffs' Section 1983, Ninth Amendment, ICCPR claim <u>with prejudice</u> because in light of the Court's decision, amendment would not cure the deficiency of the claim.

G.    *Counts XI and XII – Ms. O.Y., J.Y., L.Y., and Ms. Morelli v. Mr. Flanders, Fourteenth Amendment Substantive Due Process*

In Count XI, Ms. O.Y., J.Y., and L.Y. pursue a Fourteenth Amendment Substantive Due Process claim against Mr. Flanders, arguing that he violated Ms. O.Y.'s Fourteenth Amendment Substantive Due Process right to be free from sexual assault and intrusion on bodily integrity.  In Count XII, Ms. Morelli pursues the same cause of action for Mr. Flanders's misconduct against her.  Mr. Flanders seeks dismissal of these claims, and he argues that he is shielded from liability by qualified immunity.  Mr. Flanders further argues that Ms. O.Y. merely alleged physical contact—not physical contact that constitutes a sex offense under the Pennsylvania crimes code's definitions—therefore, she has not alleged interference of her right to bodily integrity by sexual assault.  (Docket No. 27 at 12-14).  Mr. Flanders's argument is the same with respect to Ms. Morelli's allegations: "Under none of these definitions"—deviate sexual intercourse, indecent contact, sexual intercourse, statutory sexual assault—"has Morelli alleged that Mr. Flanders committed a sexual assault in violation of Morelli's right to bodily integrity."  (*Id.* at 15).

It is well-established in the Third Circuit that sexual molestation of a student violates a clearly established federal right.  *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726–27 (3d Cir. 1989) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 & n. 41 (1977)); *Maier ex rel. B.T. v.*

*Canon McMillan Sch. Dist.*, No. CIV.A. 08-0154, 2009 WL 2591098, at *5 (W.D. Pa. Aug. 20, 2009) ("students have a constitutional right to be free from sexual assault by their teachers").  Put another way, the Third Circuit has explained that "individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment," and that such right is violated by conduct against an individual's bodily integrity that "shocks the conscience."  *Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018).  In *Kane*, the Third Circuit determined that, viewing the allegations in the light most favorable to the plaintiff, facts indicating that a police officer photographed a possible sex assault victim's body with his personal cell phone supported an inference that the officer had "acted for his own personal gratification … in both touching [the plaintiff] and photographing her intimate bodily areas" which the Court determined to be "conscience-shocking behavior" that "violated [her] right to bodily integrity."  *Id.* at 194.

From cases like *Kane* and *Stoneking*, it is clear that whether an individual's right to bodily integrity has been violated does not turn on the "intricacies of state law."  *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 351 (W.D. Pa. 2011).  In this case, the Court is satisfied that the conduct alleged is severe enough to implicate Ms. O.Y. and Ms. Morelli's right to bodily integrity.  *See Hinkley v. Baker*, 122 F. Supp. 2d 48, 53 (D. Me. 2000) ("[A] teacher touching a girl's breasts can shock the conscience."); s*ee also Doe, L.S. v. City of Philadelphia*, No. CV 23-0342-KSM, 2023 WL 5246307, at *6 (E.D. Pa. Aug. 15, 2023) (explaining that the Third Circuit has rejected a battery-focused standard for conduct that shocks the conscience).  Moreover, that certain conduct, like Ms. O.Y.'s allegation that Mr. Flanders pulled her toward himself by grabbing her thighs, could possibly have an "innocent explanation[]" is not something the Court considers at this juncture when it is obligated to give Plaintiffs every reasonable inference and to accept their

"characterization of the facts." *Hinkley*, 122 F. Supp. 2d at 53. Accordingly, the Court is satisfied that Ms. O.Y. and Ms. Morelli have adequately alleged conduct by Mr. Flanders that violated their bodily integrity in violation of their Fourteenth Amendment Substantive Due Process rights. For that reason, the Court will largely <u>deny</u> Mr. Flanders's motion with respect to Counts XI and XII with one exception: in keeping with the Court's analysis of the Parents' rights to relief *supra*, Section III.B., the Court will <u>grant in part</u> Mr. Flanders's motion to the extent that he seeks dismissal of any individual claim brought by Ms. O.Y.'s parents by which they have sought to vindicate *their daughter's* right to bodily integrity. J.Y. and L.Y. are nonetheless obviously permitted to continue pursuing claims to the extent they do so on their daughter's behalf.

H.    *Counts XIII and XIV – Ms. O.Y., J.Y., and L.Y., and Ms. Morelli v. Mr. Flanders, Fourteenth Amendment Equal Protection*

In Counts XIII and XIV, Ms. O.Y. and Ms. Morelli allege and argue that Mr. Flanders violated the Fourteenth Amendment's Equal Protection guarantee by sexually harassing Ms. O.Y. and Ms. Morelli as female students. Mr. Flanders seeks dismissal of the claims and argues that Ms. O.Y. and Ms. Morelli's allegations of an equal protection violation are conclusory as there are no fact allegations showing that these students were targeted *because* they are female, that male students were not targeted, and that Mr. Flanders's actions were discriminatory in effect and nature. (Docket No. 27 at 17-19).

The elements of a Section 1983 Fourteenth Amendment Equal Protection claim are: "(1) [plaintiff is] a member of a protected class; (2) [who is] similarly situated to members of an unprotected class; and (3) [was] treated differently from members of the unprotected class." *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016). For such a claim there must be an allegation of "'purposeful discrimination' or 'different treatment from that received by other

individuals *similarly situated*.'"  *Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 359 (3d Cir. 2024) (quoting *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005)).  Ms. O.Y. and Ms. Morelli argue that they have adequately alleged the violation of their right to equal protection because they allege that they are members of a protected class (female), they were targeted *because* they are female, Mr. Flanders made inappropriate contact with them, and male students were not similarly targeted.

The Court is satisfied that the allegations in the FAC are adequate to support equal protection claims for both Ms. O.Y. and Ms. Morelli.  Because the harassment alleged was sexual in nature, it is readily inferable that Ms. O.Y. and Ms. Morelli were treated differently than similarly situated males.  *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 378 (E.D. Pa. 2018) ("Goodwin was not required to reference a similarly-situated male, because she alleged the harassment was sexual in nature."); *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (assessing a Title VII, sexual harassment claim, and explaining that the plaintiff's "testimony about … sexual actions and … comments about her body supports her claim that … harassment occurred 'because of [the plaintiff's] sex.'" (cleaned up)).  At least at pleadings, where the Court must afford Ms. O.Y. and Ms. Morelli the benefit of every reasonable inference that can be drawn in their favor, Ms. O.Y. and Ms. Morelli have presented plausible claims under the Fourteenth Amendment's Equal Protection Clause.  Accordingly, the Court will <u>deny</u> Mr. Flanders's motion as to Counts XIII and XIV.  Consistent with the Court's discussion of Ms. O.Y.'s parents *supra*, Section III.G., the Court will <u>grant in part</u> Mr. Flanders's motion to the extent that he seeks dismissal of an equal protection claim brought by Ms. O.Y.'s parents.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant the School District's Motion to Dismiss (Docket No. 29).  Because the Court has determined that it is appropriate to dismiss all claims against the School District (Counts I, II, III, IV, and X) with prejudice, the Court will further order that the School District be terminated as a defendant in this matter.  The Court will grant in part and deny in part Mr. Flanders's Motion to Dismiss for Failure to State a Claim (Docket No. 26). Such motion will be denied insofar as Mr. Flanders sought dismissal of Counts V, VI, VII, VIII, IX, XI, XII, XIII, XIV, and XV, and granted insofar as Mr. Flanders sought dismissal of Ms. O.Y.'s parents' claims in Counts XI and XIII.  Therefore, the only remaining claims are Ms. Morelli and Ms. O.Y.'s battery claims (Counts V and VI), Ms. Morelli and Ms. O.Y.'s assault claims (Counts VII and VIII), Ms. Morelli and Ms. O.Y.'s IIED claims (Counts IX and XV), Ms. O.Y.'s substantive due process claim (Count XI), Ms. Morelli's substantive due process claim (Count XII), Ms. O.Y.'s equal protection claim (Count XIII), and Ms. Morelli's equal protection claim (Count XIV).  In light of the Court's decision to dismiss Ms. O.Y.'s parents' claims in Counts XI and XIII by granting in part Mr. Flanders's motion for dismissal at Docket No. 26, the Court will deny Mr. Flanders's Motion to Dismiss for Lack of Jurisdiction (Docket No. 28).


_/s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge


Dated: August 13, 2025

cc/ecf: All counsel of record